IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Evelyn Ramírez Lluveras;<br>Jenitza Cáceres;<br>MC and MAC, represented in this<br>action by their mother Evelyn Ramírez-Lluveras; | Civ. Number 08-1486 RLA |
| Plaintiffs | JURY TRIAL DEMANDED |
| v. | |
| Javier Pagán Cruz;<br>Carlos Sustache Sustache;<br>Zulma Díaz;<br>Edwin Rivera-Merced;<br>Miguel Vázquez-San Antonio<br>Fulano, Sutano and Mengano, all of which are<br>fictitious names representing employees,<br>contractors or agents of the Puerto Rico Police<br>Department, whose identities are unknown at this<br>time | |
| Defendants | |

**OPPOSITION TO MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

**NOW COME THE PLAINTIFFS**, through the undersigned attorneys, and respectfully OPPOSE the Motion to Dismiss filed by the Puerto Rico Justice Department purportedly on behalf of the fictitious defendants "Fulano, Sutano and Mengano." *Docket No. 31.*

The Motion to Dismiss, filed by attorneys who purport to represent these unknown defendants through a "special appearance," is based on mis-statements regarding the

record and the nature of this litigation, as well as a legal interpretation which not only violates the basic precepts of the Federal Rules, which should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding,"[1] but also defies all logic. Moreover, the motion was filed by Justice Department attorneys who do *not* represent these unknown individuals and who clearly have *no standing* to complain about plaintiffs' inabiltiy to yet identify them. These are also the very attorneys who, through their own *inaction*, have delayed this proceeding and have failed to put plaintiffs in a position where the *could* have secured the information they need to identify these unnamed officers and amend the complaint.

In further explanation of plaintiffs' position, the following information and argument is submitted for the court's consideration:

1. This case involves the shooting death of plaintiffs' decedent, their husband and father, Miguel Cáceres Cruz, who was shot to death in a widely publicized and videotaped event occurring in Humacao August of 2007.

2. On April 28, 2008, plaintiffs filed an action before this court, naming as defendants the three officers on the scene: Javier Pagán Cruz (currently incarcerated after being found guilty of the murder of Mr. Cáceres), and Zulma Díaz and Carlos Sustache. They also sued the person they believed to be the director of the Humacao Tactical Operation Division (DOT), Miguel Vázquez San Antonio, and the Humacao Area Commander, Edwin Rivera Merced.

---

[1] Federal Rules of Civil Procedure, Rule 1.

3. In addition to the above named defendants, plaintiffs included fictitious defendants — "Fulano, Sutano and Mengano" whom they had yet to identify. This kind of pleading is fairly typical in actions brought pursuant to Section 1983, as it is in "Bivens" actions, since the victim of official brutality often does not know the identity of the offenders, or, as here, the identity of those superior officers who may respond for their injuries. *See, eg.*, <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

4. In point of fact, service of the *named* defendants proved to be quite difficult. One was in prison, others had to be found at their places of residence, and one — former Humacao Area Commander Edwin Rivera Merced — was virtually *impossible* to locate. The process server hired by the plaintiffs had to make numerous attempts to reach this defendant, after being given incorrect information by the Puerto Rico Police Department (PRPD) *several times*, and after being sent on what can only be characterized as a wild goose chase.[2]

5. Accordingly, the last defendant to be served was Commander Edwin Rivera Merced, who plaintiffs finally were able to locate on August 5, 2008, and who is represented by the Puerto Rico Justice Department. This defendant, however, simply failed to respond to the complaint, and default was entered against him. *See, Motion for Default dated October 2, 2008, Docket No. 24 and Order on Default, Docket No. 26.*

---

[2]Since this paragraph makes factual assertions, undersigned counsel is submitting this opposition under penalty of perjury.

6. In the first several months of this litigation --between May and early October — plaintiffs' could not engage in *any* discovery, since the Rule 26 meeting could not yet take place. This time was taken up with service of the defendants and several Motions for Enlargement of Time to Answer and with defaults entered against two defendants (defendant Pagán and defendant Rivera Merced). The last answer to the complaint was received on September 10th, 2008, although a previously defaulted defendant, Edwin Rivera Merced, now has been given until *December 1, 2008*, to answer the complaint. *See, Docket Nos. 7 and 8 (issuing summons); Docket No. 9 Motion for Enlargement of Time filed on July 16th; Docket Numbers 11 and 12, Appearance and Answer by Díaz on July 21, 2008; Docket Number 15, Motion for Extension of Time until September 10th for Miguel Vázquez-San Antonio to answer the complaint (filed by the Justice Department which was awaiting a determination on Law 9 representation); Docket No. 17, Answer by defendant Sustache; Docket No. 18, Motion for Default against defendant Pagán; Docket No. 21, Answer filed by Justice Department on behalf of defendant Vázquez-San Antonio; Docket No. 24, Motion for Default as to Edwin Rivera-Merced; Docket No. 29, Motion to Set Aside Default for this defendant, and this court's order of October 28th, Docket No. 29, giving Rivera-Merced until December 1st to answer the complaint.*

4. Undersigned counsel was on trial before Judge Pérez Giménez for the last two weeks of September, 2008. Immediately after finishing the trial, she wrote to the attorneys for the defendants on October 6th, offering five alternative dates in October to hold the Rule 26 meeting among counsel, a *pre-requisite* to engaging in any discovery. *See, Exhibit A, letter of October 6th*.

5. In response to that letter, plaintiffs' counsel heard only from attorney Corona, counsel for defendant Sustache, who indicated his availability on one or more of the dates, and from attorney Landrau, counsel for defendant Díaz, who indicated that he could *not* meet on any of the proposed dates. *See, Exhibit B, e-mail correspondence between Berkan and Landrón.* The attorneys from the Justice Department did not respond to the October 6th request for a Rule 26 conference.

6. The court, however, acted the following day, setting an Initial Scheduling Conference for November 13th, and requiring the parties to file a Joint ISC Memorandum by November 3rd. *See, Docket No. 27.*

7. *Immediately* upon receiving this court's order regarding the ISC, the undersigned wrote to all counsel — including those from the Justice Department — noting that in addition to the general Rule 26 obligation, all counsel now had an additional obligation to meet in order to comply with the ISC order. *See, Exhibit C, Berkan memo to counsel, dated October 7, 2008.*

8. A meeting was then scheduled for *October 22nd*, one of the original dates suggested by the undersigned in the context of the Rule 26 meeting. Plaintiffs' attorneys were present, as were counsel for defendant Sustache and the two Justice Department attorneys who stated that they represented Miguel Vázquez San Antonio *and Edwin Rivera-Merced* (as to whom default had been entered). Counsel for defendant Díaz participated by telephone.

9. During the October 22nd meeting, the undersigned *pointed out to the attorneys from*

*the Justice Department* that *default had been entered as to* their client, Edwin Rivera-Merced, a fact that was apparent on the record, but as to which they expressed ignorance. The parties also addressed the issue of the *identity of the superior officers* of the street-level policemen who directly intervened with Mr. Cáceres. The Justice Department attorneys also indicated that plaintiffs had sued the *wrong person* as the Director of the Humacao DOT. They specifically agreed that they would engage in *informal efforts* to identify the correct person, by asking their *clients*, defendants Vázquez San Antonio and Rivera-Merced and providing that information to the plaintiffs, so that they could amend their complaint to include the proper person as a defendant.

10. During the meeting, *all parties* agreed that an initial stage of discovery would be directed to ascertaining information about the supervisory change in the PRPD and the administrative records of the officers involved in this fatal shooting.

11. *Approximately one hour* after the conclusion of the October 22nd meeting between counsel, the undersigned sent to all parties an e-mail including the *format* of the ISC which was to be submitted, as well as the *completed* Section 8 of the report, which was to set forth the agreements of the parties with respect to a discovery plan. *See, Berkan email of October 22nd, Exhibit D hereto.*

12. In her e-mail sending the proposed ISC to the defendants, the undersigned stated *inter alia* as follows: "I have written up the agreements I believe we reached today. Please take a look at this, as it will go out on behalf of all parties. Let me know if you have any additions, changes, etc." *See, Exhibit D.*

13. Section 8 of the proposed ISC report provided to all counsel stated in pertinent part as follows:

> **"8. Itemization of discovery to be conducted with proposed deadlines**
>
> "Counsel for all represented parties met on October 22, 2008, in order to discuss the issue of deadlines for the events set forth in the court's order of October 7, 2008. They all agreed that at this time it is impossible for them to predict accurately any of the time frames and deadlines anticipated in the court's order, due to the particularities of this litigation, for the following reasons:
>
> ............
>
> - *"Plaintiffs expressed an interest in amending the complaint to include other supervisory officers, unknown to the plaintiffs at this time, and as set forth infra in Section No. 9, it is likely that there will be amendments to the complaint to add other defendants.* All parties were reluctant to engage in deposition discovery as to the events of August 11, 2007, or as to damages suffered by the plaintiffs, until these other defendants are added, so as not to duplicate efforts.
>
> "Given all of these circumstances, the parties reached several agreements, as follows:
>
> - "That the attorneys from the Justice Department, counsel for defendant Edwin Rivera-Merced, would use their good offices to attempt to obtain a re-taping of the criminal proceedings in the trial against defendant Javier Pagán, as this may contain significant information and/or testimony which would be useful to all parties in this case.
>
> ..............
>
> - *In the next two to three-month period, plaintiffs would be directing paper discovery directed at the Puerto Rico Police Department, attempting to obtain information about the supervisory hierarchy involving the police officers in this case, their disciplinary and personnel records, training and retraining documents, and their evaluations and the like. ....*
>
> - "*The Justice Department attorneys* have already requested certain files from the Police Department, but have not yet received them. They also

> *committed themselves to obtaining information from defendant Rivera-Merced, then Area Commander of the Humacao Area, concerning supervisory structures pertinent to this action.*

- "Given the history of difficulties in obtaining information from the Puerto Rico Police Department, the plaintiffs will in all likelihood request the court to order the productions of documents mentioned above;

- *"Until additional defendants are identified*, it would be premature to make any decisions on expert witnesses, with the exception of the designation of an expert witnesses on plaintiffs' damages." *See, Exhibit E, Draft of ISC Report, emphasis supplied.*[3]

14. The proposed ISC report sent by the undersigned to all counsel also contains Section 9, which provides as follows:

**"9. Anticipated amendments to the pleadings**

   **"A. Plaintiff**

   Plaintiffs *fully expect to amend the complaint, in order to include as defendants other officers in the supervisory hierarchy*. Plaintiffs also have been given information which demonstrates that defendant, Miguel Vázquez San Antonio was not, in fact, the head of Tactical Operations for Humacao on August 11, 2007. *Once plaintiffs have ascertained the identity of the person who held that position, and have also clarified the particular unit to which defendants Pagán, Sustache and Díaz were assigned,* it is highly likely that they will file a voluntary dismissal against this defendant and *substitute the correct officer or officers.***"** *See, Exhibit E, emphasis supplied.*

15. On the day following the conference among counsel, the Justice Department attorneys — having been advised by *the undersigned* that their client Rivera-Merced was in default — moved to set aside the default, which request was granted by the court a few days later. *See, Docket Nos. 28 and 29.*

---

[3]The draft submitted as Exhibit E is a *later* version of the proposed ISC. The agreements of counsel, as reflected in Section 8, however, remain the same.

8

16. On October 27, 2008, the undersigned *again* wrote to defense counsel — including the attorneys from the Justice Department — providing them with the fully completed ISC memorandum, covering all of plaintiffs' portions and all of the portions corresponding to defendant Sustache. *See, Exhibit F, Berkan e-mail of October 27th*. The undersigned again requested the remaining parties — including those represented by the Justice Department — to comply with their obligations to complete their portions of the Joint ISC Memorandum, stating "[w]e have to submit this next week, so I would appreciate it if the other parties submit their parts as soon as possible, in order to give me time to integrate all parts by the deadline of Monday, November 3rd." *Id.*

17. In her October 27th e-mail, plaintiffs' counsel also informed the other parties that she had cited a document production for November 12, 2008, and appended the subpoenas she had issued to the PRPD. *See, Exhibit G, Subpoenas issued to the PRPD*. Much of the documentation being requested is precisely in order to ascertain the identity of the supervisors who may respond for the civil rights violations in this case, and the records of the errant police officers, information which would allow her to amend the complaint to include previously unknown PRPD officers as defendants in this action.

18. On October 28th, this court *motu propio* continued the Initial Scheduling Conference *sine die* precisely because default had now been lifted against Edwin Rivera-Merced, and he was not yet required to answer the complaint. The court also vacted the deadline for the Joint ISC Memorandum. *See, Docket No. 30.*

19. Upon receiving this order of the court, the undersigned *immediately* wrote to

9

all counsel regarding their *ongoing Rule 26 obligations*, and stating as follows:

> "Compañeros — Although Judge Acosta has just set aside the scheduling confernece and vacated the date for the Joint Initial Scheduling Memorandum until defendant Edwin Rivera Merced answers the complaint, this *does not eliminate our Rule 26 obligations.* (Please take not of my earlier correspondence requesting the Rule 26 conference.)  Both attorney Corona [defendant Sustache's counsel] and I have *already complied* with the requirements of the rule by sending you our initial disclosures (within our sections of the ISC, which I have forwarded to all counsel.)  Please indicate by return e-mail the precise dates when we can expect to receive your disclosures."  *See, Exhibit H, Berkan email of October 28, 2008.*

20. To date, the undersigned has heard *nothing* from the Department of Justice attorneys with respect to the required Rule 26 disclosures.  Nor has the Justice Department supplied the other parties with their parts of the Initial Scheduling Memorandum which eventually must be completed and submitted to the court.

21. Given this procedural background, the Motion to Dismiss filed yesterday by the Justice Department is nothing short of *astounding*. The position of the Justice Department appears to be as follows: Once a victim of police abuse files an action, the PRPD can make it very difficult to find and serve the *named* defendants, the Justice Department can then spend *months* dealing with Law 9 applications as to named defendants, and then can allow a defendant to go to *default* by failing to answer a complaint for over *two and a half months,* only to use a request to vacate the default and thereby delay the ongoing ISC process.  The argument continues to the effect that this same Justice Department — which clearly has greater access to information than do the victims of police violence ---- can commit to finding out information about supervisory

structures, but fail to do so, can also fail to provide *any* of the information required in the mandatory Rule 26 disclosures, and then move for *dismissal* against *unknown defendants,* purportedly because the *plaintiffs* have failed to acquire the information, despite the fact that the rules, unfortunately, *prohibit the plaintiff from conducting any discovery*, since the Rule 26 meeting had not yet taken place, precisely due to the lack of diligence of the *named defendants* in responding to the complaint.

22. And, as a final blow adding insult to injury, the defendants purportedly represented by the Justice Department — "Mengano, Fulano and Sotano" — have the *audacity* to assert that *plaintiffs* have had "*ample opportunity to diligently discover* the identities of these defendants and amend the complaint....," implying that the failure to do so in the first 120 days was somehow due to lack of diligence on the part of plaintiffs.

23. In positing this patently absurd argument, the defendants also cite case law regarding the Rule 4(m) obligation, which is thoroughly inapplicable to the case at bar. In the *unreported* case of <u>Austin v. Spaulding</u>, *2002 U.S. Dist LEXIS (R.I., 2002),* a *pro se* plaintiff failed to serve a *named* defendant for well over *two years*. In <u>Wei v. Hawaii</u>, *763 F.2d 370, 371 (9th Cir., 1985),* a case was dismissed in its entirety after six months, when the plaintiff "made no attempt to serve the summons and complaint upon *any* of the defendants," and did not show good cause for failing to do so.  And in <u>In re DuFour</u>, *153 B.R. 853 (B. Minn, 1993),* the plaintiff had served the complaint *without* the summons, and upon being advised of the error, made no further attempt to effectuate service.  It is

certainly difficult to fathom what makes the defendants believe that these cases have *any* relevance to the matter at hand.

24. The Justice Department attorneys who have filed this Motion, moreover, never explain just how it is that they acquired *standing* to represent these unknown defendants – "Fulano, Sutano and Mengano." This court is well aware of the Law 9 process whereby the Justice Department assumes representation of officers sued for civil rights violations, *upon a request by the officer to have the Department assume his/her representation.* Clearly, officers who have not yet even been *identified* could not have made this request.

25. In the final analysis, this entire incident amounts to nothing more than improper game-playing and an attempt at one-upmanship. The court and the parties, however, would be much better served if the Justice Department dedicated itself instead to assisting with the discovery of the information which would allow plaintiffs such as the Cáceres family to identify and sue those supervisory officers who, through their actions and omissions, have caused such terrible and devastating injury and damage to them through the unwarranted killing of their loved one.

26. This case involves a very serious matter — the unjustified killing of a father of three by police officers and the damage wrought by these actions. Plaintiffs have diligently attempted to move this case along and have met with the delays which are typical in cases of this nature. The path ahead promises to be difficult and tedious. In light of the procedural history of this case, there simply is no justification for the Justice Department – on behalf of unidentified defendants it does *not* even represent – to take up this court's

time with a motion such as this. Nor is there any justification for the attempt by the Justice Department to misrepresent the record and accuse the *plaintiffs* of lack of diligence, when it has a lot to answer on its own score in this regard.

FOR ALL OF THE ABOVE REASONS, the plaintiffs respectfully request that this court DENY the Motion to Dismiss.

I hereby CERTIFY that this motion is being submitted through the ECF system. There are no parties yet served, so none will be automatically notified, beyond plaintiff's counsel.

I swear that the assertions in this motion which refer to facts outside of the public record are true, under penalty of perjury pursuant to 28 USC §1746.

In San Juan Puerto Rico, this 29th day of October, 2008.

**Respectfully Submitted**

/s/ Judith Berkan
Judith Berkan
Berkan/Mendez
Calle O'Neill G-11
San Juan, Puerto Rico 00918-2301
Tel.: (787) 764-0814
Fax.: (787)250-0986
bermen@prtc.net
US DC No. 200803
berkanj@microjuris.com