IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Evelyn Ramírez Lluveras et al<br><br>   Plaintiffs<br><br>v.<br><br>Javier Pagán Cruzm et al<br><br>   Defendants | Civ. Number 08-1486 RLA<br><br>JURY TRIAL DEMANDED |

**OPPOSITION TO REQUEST FOR PROTECTIVE ORDER**

**TO THE HONORABLE COURT:**

    **NOW COME THE PLAINTIFFS**, through the undersigned attorneys, and respectfully oppose the Motion for a Protective Order, filed by defendant Miguel Vázquez San Antonio, purportedly on behalf of the Puerto Rico Police Department (PRPD) and the Commonwealth of Puerto Rico. In Opposition, the plaintiffs respectfully state as follows:

    1. On November 13, 2008, the plaintiffs filed a Motion requesting this court to compel the PRPD to produce a number of documents clearly relevant to the instant case, which arises from the shooting death of Miguel Cáceres by a police officer. *See, Dkt # 34.*

    2. In their request, plaintiffs explained that PRPD had failed "to respond to a duly executed subpoena requiring the production of the documents, which are critical to the plaintiffs' cause of action and which are necessary for plaintiffs to obtain prior to amending their complaint to include the heretofore unidentified John Doe defendants. *Id.*

    3. Plaintiffs also requested the court to Order the PRPD to pay for costs and attorneys fees in relation to this issue, and that the court duly inform the PRPD that any

further failure to comply with its discovery obligations will result in further sanctions, including contempt of court. *Id.*

4.  In the motion, the plaintiffs set forth in detail the precise documents which had been included in subpoenas directed at the PRPD, which had been served on the PRPD, both at Police Headquarters in Hato Rey and in the Humacao Area.  Although the PRPD was required to produce the documents on November 12, 2008, with one exception,[1] it failed to do so.

5. Notably, the PRPD simply failed to show up.  Prior to the date the productions was due, it did *not* communicate with the undersigned.  Nor did the PRPD file a request for an order of protection before that date.

6. The patent failure of the PRPD to comply with its discovery obligations forced the undersigned to request this court for an order compelling it to do so, implying a considerable effort on the part of the undersigned.

7. To this day, neither the PRPD nor any of the defendants in this action have even *opposed* the Motion to Compel.

8. On the other hand, some two weeks after the Motion to Compel was filed, the attorney for one of the *current* defendants, Miguel Vázquez San Antonio, represented by the Puerto Rico Justice Department, presented a Motion for a Protective Order. *See, Dkt*

---

[1] The PRPD personnel department provided the personnel files to the undersigned pursuant to the subpoena.  The undersigned duly informed *all counsel* of that fact via e-mail on November 7, 2008 and invited them to review the produced documents and/or make copies of the same.  Thereafter, on November 17, 2008, the Public Integrity Section produced a *summary* of complaint files (failing to respond to the subpoena for the documents themselves.)  The undersigned sent the summary to *all counsel* on that date.

*Nos. 40 and 41.* In the November 25th Motion for a protective order, Mr. Vázquez San Antonio's attorney, indicated that he was representing the "Department of Justice of Puerto Rico"and the Police Department." *Id.* The following week, a *different* attorney from the Justice Department filed a Notice of Special Appearance. *See, Docket 46.*

8. The PRPD's Motion for a Protective Order, notably, refers ly to the "personnel files of the defendant agents," *Dkt No. 41, at ¶¶ 6, 16, 18 and 20.* It also makes oblique reference to the *"possibility"* that some unknown "PRPD documents"might provide "information regarding informants [or] tactical strategies," *Id. ¶14,* and that these unknown files may also contain "official information"which was obtained "in confidence." *Id, ¶¶11-13*, or may somehow implicate an ongoing criminal investigation. *Id ¶13.*

9. On November 26th, 2008, just *one day* after the request for a Protective Order, this court issued an order providing for an *in camera* inspection of the objected documents. The inspection is supposed to take place later today. The court also ordered the parties to submit to the court for its approval a joint proposed Protective Order. *See, Dkt No. 42.*

10. The court's order was issued without the benefit of *plaintiffs*' position with respect to the requested order of protection. It was also issued just hours before the undersigned lead counsel for plaintiffs left Puerto Rico to be with her family in New York for the Thanksgiving holiday, returning full time to the office only today.

11. On Monday, December 1st, Alex Vázquezthe attorney for the Justice Department who continues to represent defendant Vázquez San Antonio and who has now formally assumed representation of Edwin Rivera-Merced, sent a proposed Protective Order to the

3

undersigned, requesting a response within approximately two hours. Although the undersigned was out of the office, her co-counsel reviewed the proposal and sent back plaintiffs' reaction to the same in approximately one hour, at 10:50 AM on December 1st. To date, there has been *no response* by the Justice Department, except to acknowledge receipt of the e-mail setting forth plaintiffs' position. It is for that reason that the parties *cannot* comply with the court's order requiring submission of a *joint proposal* for a protective order.

12. In light of all these circumstances, the plaintiffs believe that it is prudent for them to file their formal *opposition* to the original request for a protective order. Due to time limits, however, this opposition will only *outline* the arguments in opposition thereto, in "bullet" form.

## ARGUMENT

**A. The assertion of "privilege" or other reasons for non-disclosure**

The blanket request for a protective order should be denied for the following reasons:

- The PRPD's request for a protective order is based exclusively on privileges and evidentiary rules under the law of the *Commonwealth of Puerto Rico.*

- The request incorrectly hangs its hat on *one paragraph* from the leading case of *Jaffe v. Redmond, 518 U.S. 1, 12-13 (1996),* in which the Supreme Court indicates that state law policy decisions may impact upon whether or not the

federal court — applying *common law* — should "recognize a new privilege or amend the coverage of an existing one." The defendants, however, completely ignore the *entirety* of the <u>Jaffe</u> precedent, which is that *federal common law* recognizes a privilege extending to the relationship between a psychotherapist and his or her patient. In making that determination, the Supreme Court *applied Rule 501* of the Federal Rules of Civil Procedure — mandating the application of a *federal* privilege. In making that determination, the high court took note of the *uniformity* of *all states* in recognizing such a privilege, *as well as the policy determination* in favor of encouraging the *free flow of information* in the context of psychotherapy.

- The defendant, however, is patently incorrect in his assertion that the *result* of <u>Jaffe</u> is that "the privileges and confidentiality matters raised in the [Motion for Protective Order] should be analyzed in light of the Puerto Rico Rules of Evidence and PR Law No. 184." *Defendant's Motion, at ¶10.*

- Indeed, Federal Rule of Evidence 501 provides *precisely the opposite*. In Federal Court actions such as the case at bar, brought pursuant to *federal law*, "the privilege of a witness, person, government, State, or political subdivision thereof *shall be governed by the principles of common law* as they may be interpreted by the courts of the United States..." Only in those cases in which the local law provides the rule of decision is the local law of privilege invoked. *FRE 501 (emphasis supplied.)*

5

- Notwithstanding this distinction, in cases involving both federal and state law claims, the First Circuit has instructed the lower courts to follow a procedure which would at least consider both sets of law in examining the privilege issue. See, <u>In re Hampers</u>, 651 F.2d 19 (1st Cir., 1981). The district court must first *examine* whether in fact, the local court would recognize the existence of a privilege pursuant to local law.   If this is so, the court must then examine whether or not the state's asserted privilege is "intrinsically meritorious in our independent judgment,"taking into consideration the following four factors: (1) whether the communication is originated "in a confidence that [it] would not be disclosed;" (2) whether this fact is essential to the "satisfactory maintenance of the relation between the parties," (3) whether that relationship "ought to be sedulously fostered;"and (4) whether "the injury that would inure to the relation by the disclosure of the communications (would be) greater that the benefit thereby gained for the correct disposal of litigation." *651 F.2d at 22-24;* <u>Green v. Fulton</u>, *157 FRD 136 (D. Me. 1994).*
- *None* of these criteria are present in the defendants' motion, with the possible exception of the first — whether the privilege even *exists* under Puerto Rico law.  While the defendant relies on the blanket assertion of the Puerto Rico law provisions, they really do not engage in any *analysis* regarding this first stage set forth by the Court of Appeals.  The defendants, on the other hand,

simply *ignore* the second four-part, analysis, making no argument about the "relationship" involved, and whether it is confidential or needs to be preserved. And, professing total *ignorance* about the *obvious* purpose of the requested records ("since the PR-DOJ and the PRD do not know what is behind the plaintiffs' request for a subpoena of the Agents' personnel file," Def's Motion, at ¶ 14), the defendants of course do not examine the relative harm of disclosure versus the needs of this litigation. *See, eg.,* <u>Gutierrez-Rodriguez v. Cartagena,</u> 882 F.2nd 553 (1st Cir, 1989); <u>Diaz v. Diaz-Martínez</u>, 112 F.3d 1, 4 (1st Cir., 1997); <u>Green v. Fulton</u>, *op cit.*

- Nor have the defendants even *identified* with any precision the exact files which they claim merit this extraordinary protection, as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure. They have not examined the documents for the purpose of "expressly mak(ing) the claim." Nor have they "described the nature of the documents ... not produced or disclosed." *Id.*

- And, importantly, the defendants at no time have offered *any justification* for their failure to appear on November 13th, if just for the assertion of the privilege. Rather than doing so, they merely did not show up, forcing the plaintiffs and their attorneys to incur in considerable expenses and expenditure of time and efforts.

**B. The Proposed Protective Order**

13. As noted above, the defendants – through attorney Vázquez, who does *not* represent the PRPD — sent a proposed protective order to the undersigned on Monday of this week.

14. The proposed protective order would cover virtually *all* of the requested documents, based merely on a designation by the PRPD that such documents are "confidential." The proposal would have some unknown "defendant" do the designation, meaning that only plaintiffs or their attorneys and their staff, or their experts would have access to the documents, with a contempt sanction applicable to unwarranted disclosure.

15. In response to the proposal, plaintiffs indicated that they would be willing to abide by such restrictions only with respect to defendants' medical records (some of which have *already* been disclosed in the personnel file production some weeks ago – which *none* of the defendants have even bothered to examine, despite plaintiffs' invitation to do so.) This remains the position of the plaintiffs, who see no basis for such restrictions on documents (1) which are of extreme public interest; (2) as to which no *specific* parts have been designated as privileged; and (3) some of which have *already* been discussed in the media in Puerto Rico.

**C. A final word**

Finally, plaintiffs must object *strenuously* to the misrepresentation by the defendant in its request for a protective order, that "the plaintiffs served these subpoenas to the PRPD

without notifying the PR-DOJ." This is patently false. Attorney Vázquez and his co-counsel at the Justice Department were notified *several times*, in e-mails and by fax, which is *amply demonstrated* by the documentary record in this case.

WHEREFORE, plaintiffs respectfully request that this court:

(1) Deny the request for a protective order;

(2) Compel the production of all documents mentioned in the Motion to Compel; and

(3) Cover costs and attorneys fees related to these matters.

I hereby certify that I am filing this motion through the ECF filing system, which will automatically notify all counsel of record. I also certify that on this date, I am faxing a copy of this motion to the PRPD Legal Department, at fax number 787-781-7993.

In San Juan Puerto Rico, this 2nd day of December, 2008.

**Respectfully Submitted**

/s/ Judith Berkan
Judith Berkan
Berkan/Mendez
Calle O'Neill G-11
San Juan, Puerto Rico 00918-2301
Tel.: (787) 764-0814
Fax.: (787)250-0986
bermen@prtc.net
US DC No. 200803
berkanj@microjuris.com