IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EVELYN RAMIREZ-LLUVERAS, *et al.*,

**Plaintiff,**

v.

CIVIL NO. 08-1486 (FAB)

JAVIER PAGAN-CRUZ, *et al.*,

**Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

This is a civil-rights action brought under 42 U.S.C. § 1983 ("section 1983") arising from the highly publicized death of Miguel A. Caceres-Cruz ("Caceres"). Caceres' wife, Evelyn Ramirez-Lluveras, and their three children, Jenitza Caceres, MC and MAC (collectively, "plaintiffs"), commenced this action on behalf of themselves and Caceres against several field officers in the Puerto Rico Police Department ("PRPD"), Javier Pagan-Cruz ("Pagan"), Carlos Sustache-Sustache ("Sustache"), Zulma Diaz ("Diaz") (collectively the "Field Officers"), and several supervisory officers in the PRPD, Juan Colon-Baez ("Colon"), Rafael Figueroa-Solis ("Figueroa"), Victor Cruz-Sanchez ("Cruz"), Edwin Rivera-Merced ("Rivera") and Pedro Toledo-Davila ("Toledo") (collectively, the "Supervisory Defendants"). (Docket No. 64.) Plaintiffs allege

that their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States were violated when Caceres was forced to the ground by the Field Officers and was eventually shot and killed by Pagan in Humacao, Puerto Rico. They also claim damages pursuant to article 1802 of the Civil Code.

Currently before the Court is the Supervisory Defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Rule 12(b)(6)) and for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) (Rule 12(c)). (Docket No. 113.) For the reasons set forth below, the Court **GRANTS in part and DENIES in part** the motion to dismiss and the motion for judgment on the pleadings.

**FACTS**

The facts taken from the complaint, which are assumed to be true, are as follows:

On August 11, 2007, Caceres was on a street in Humacao, Puerto Rico. (Docket No. 64 at ¶ 4.1.) The Field Officers, without justification, forced Caceres to the ground and threatened to arrest him. <u>Id</u>. With Sustache and Diaz's encouragement and instigation, Pagan shot at Caceres. <u>Id</u>. at ¶ 4.2. After shooting Caceres several times, Pagan delivered the fatal blow and shot Caceres in the head. <u>Id</u>. at ¶ 4.2-4.3. After the shooting, the

Field Officers abandoned the scene without aiding Caceres.  Id. at ¶ 4.5.  Although Diaz reported the incident through the police communication system, she omitted that Pagan shot and killed Caceres.  Id. at 4.6.

As of the date of the shooting, the Supervisory Defendants held high-ranking positions within the PRPD: Colon was the highest level supervisor in the Humacao Area Tactical Operations Division (the "TOD"), Figueroa was the interim director of the TOD, Cruz was the Commander of the Humacao District of the PRPD, Rivera was the Humacao Area Commander, and Toledo was the PRPD Superintendent. Id. at 3.9-3.13.  Plaintiffs contend that the Supervisory Defendants proximately caused Caceres' death when they were deliberately indifferent to plaintiffs' rights, failed to supervise, evaluate, assign and monitor the Field Officers adequately, and fostered an environment within the PRPD such that the Field Officers felt that they could act illegally with impunity and without consequence.  Id. at 3.13.

Specifically, plaintiffs plead that a year prior to the shooting, Pagan was facing expulsion from the PRPD because of his "proven misconduct and violence towards citizens." Id. at ¶ 4.19. Nevertheless, Toledo reduced Pagan's penalty to a 60-day suspension.  Id.  Subsequently, Rivera placed Pagan in an "impact

unit" despite Pagan's suspension and several complaints of aggression and insubordination. Id. at ¶ 4.20-4.31. Cruz and Figueroa made *pro forma* high evaluations of Pagan and Sustache despite their known danger. Id. at ¶ 4.9. In fact, in January 2007, Cruz gave Pagan a glowing evaluation despite the fact that Pagan was disciplined and had other complaints pending against him. Id. at ¶ 4.13.

## PROCEDURAL BACKGROUND

On April 20, 2010, the Supervisory Defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6) and for judgment on the pleadings under Rule 12(c). (Docket No. 113.) Plaintiffs submitted an opposition on December 20, 2010. (Docket No. 232.) The Supervisory Defendants replied on February 15, 2011. (Docket No. 246.) On September 23, 2011, plaintiffs filed an informative motion regarding new case law on section 1983 liability. (Docket No. 324.) In compliance with an order issued by the Court (Docket No. 325.), defendants submitted a motion to present their analysis of the new case law. (Docket No. 325.)

The Supervisory Defendants contend that plaintiffs' amended complaint must be dismissed because: (1) plaintiffs do not have standing to bring a section 1983 action; (2) plaintiffs insufficiently plead a cause of action under the Fourth, Fifth,

Eighth and Fourteenth Amendments; and (3) the Supervisory Defendants are shielded from liability under the doctrine of qualified immunity. (Docket No. 113 at 14-45.) Each argument will be discussed in turn.

## DISCUSSION

### I.   Standard Under Rule 12(b)(6) and Rule 12(c)

A defendant may move to dismiss an action for failure to state a cause of action pursuant to Rule 12(b)(6) and for judgment on the pleadings pursuant to Rule 12(c).  A motion for judgment on the pleadings is governed by the same standards as a motion to dismiss. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2009) (citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)).

When analyzing a motion to dismiss, the facts contained in the pleadings are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn from those facts. R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006), Yet, "[A] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Accordingly, the Court proceeds in two steps. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544(2007); Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  First, the Court separates legal

conclusions "couched as fact" and "threadbare recitals of the elements of a cause of action" from non-conclusory factual allegations.  Ashcroft, 129 S.Ct. at 1949-50.  The latter are treated as true, whereas the former are disregarded.  Id.; Ocasio-Hernandez, 640 F.3d at 11-13.  Second, the Court determines whether the non-conclusory factual allegations are "plausible" rather than merely "conceivable."  Id.

## II. Standing

Standing concerns the threshold issue of whether the plaintiff is the appropriate person to bring the matter to the court. Benjamin v. Aroostook Med. Ctr., 57 F.3d 101, 104 (1st Cir. 1995) (quoting Erwin Chemerinsky, Federal Jurisdiction § 2.3, at 48 (1989)).  To have standing, plaintiffs have the burden to plead the plausibility that (1) plaintiffs suffered or will imminently suffer an injury (2) that is traceable to the Supervisory Defendants' conduct, such that (3) a favorable decision is likely to redress the injury.  Nat'l. Org. for Marriage v. McKee, Nos. 10-2000, 10-2049l, 2011 WL 3505544, at *6 (1st Cir. Aug. 11, 2011) (internal citations omitted); Vargas v. Carrion, No. 10-1153, 2011 WL 92030, at *1 (D.P.R. Jan. 3, 2011).  Plaintiffs allege that they have standing to bring both a claim on their own behalf and a survival claim on Caceres' behalf.  (Docket No. 232 at 13.)

**A.   Plaintiffs' Claim as Caceres' Representative**

As a general rule, a plaintiff does not have standing to assert claims for parties who are not before the court.  Allen v. Wright, 468 U.S. 737, 751 (1984) ("Article III of the United States Constitution limits standing in federal court to persons who have themselves been injured.").  As an exception to the general rule, an heir has standing to bring a section 1983 action on behalf of a deceased person if the law of the state embracing the federal district court where the action is commenced permits recovery.  Robertson v. Wegmann, 426 584, 98 (1978); Gonzalez Rodriguez v. Alvarado, 134 F.Supp.2d 451, 452-54 (D.P.R. 2011).

Under Puerto Rico law, a decedent's heirs may recover for the decedent's pain and suffering prior to death.  Gonzalez Rodriguez, 134 F.Supp.2d at 454 (citing Vda. de Delgado v. Boston Insurance, 101 P.R. Dec. 598 (1973)).  Thus, "Puerto Rican law permits an heir to bring a § 1983 action in his representative capacity only when there is a showing that the deceased has suffered prior to his death."  Id.; Lopez-Jimenez v. Pereira, No. 09-1156, 2010 WL 500407, at *2 (D.P.R. Feb. 3, 2010).

The amended complaint states that the Field Officers forced Caceres to the ground and threatened to arrest him.  (Docket No. 64 at ¶ 4.1.)  Pagan shot Caceres several times and eventually

delivered the fatal blow by shooting Caceres in the head.  Id. at ¶ 4.3.  The Field Officers did not aid Pagan.  Id. at ¶ 4.5.  The shooting caused Caceres to suffer "excruciating pain, fear, desperation and other emotion [sic] and physical suffering, and survived in that condition for a period of time . . ."  Id. at ¶ 4.39.  Accordingly, plaintiffs have standing to assert a section 1983 claim on Caceres' behalf.  Lopez-Jimenez, 2010 WL 500407 at *2 (finding standing to bring a section 1983 claim in a representative capacity where the complaint alleged that the decedent "suffered extreme physical and mental pain while he was suffering a health condition that required emergency medical care.").

### B.   Plaintiffs' Individual Claims

"First Circuit case law holds that surviving family members cannot recover in an action brought under section 1983 for deprivation of rights secured by the federal constitution for their own damages from the victim's death unless the unconstitutional conduct was aimed at the familial relationship." Robles-Vazquez v. Garcia, 110 F.3d 204, 206 n. 4 (1st Cir. 1997); Vargas, 2011 WL 92030, at *2.  Government interference in certain private decisions, such as procreation, or with the parent-child relationship, are aimed at the family relationship for section 1983 purposes.  Reyes Vargas v. Rosello Gonzalez, 135 F.Supp.2d 305,

308-09 (D.P.R. 2001) (citing Pittsley v. Warish, 927 F.2d 3, 8 (1st
Cir. 1991)).

        Plaintiffs argue that they have standing because the
Supervisory Defendants allegedly impeded their constitutional right
to the enjoyment of their father's and husband's company. (Docket
No. 64 at ¶ 4.37.) ("[t]he actions of defendant . . . had the
effect of depriving the plaintiffs herein of the company,
affection, and companionship of their father and husband . . .").
"There is no absolute right to enjoy the companionship of one's
family members free from all encroachments by the state." Soto v.
Flores, 103 F.3d 1056, 1062 (1st Cir. 1997). Thus, the loss of
companionship, without more, is insufficient to show governmental
interference aimed at the family relationship. Id.; Reyes Vargas,
135 F.Supp.2d at 305-09 ("State action that affects the parental
relationship only incidentally, even though the deprivation may be
permanent as in the case of an unlawful death, is not sufficient to
establish a violation of an identified liberty interest."); 
Gonzalez Rodriguez v. Alvarado, 134 F.Supp.2d 451, 452-53 (D.P.R.
2011).

        Plaintiffs' contention that they have standing because
the Supervisory Defendants' conduct was "shocking to the
conscience" and taken with "intent to do harm" is inapposite.

(Docket No. 232 at 37-41.)  Although the Supreme Court recognizes
a person's substantive due process rights upon a showing of conduct
"shocking to the conscience" or carried out "with intent to do
harm," the defendant's conduct must still be aimed at the family
relationship.  <u>Reyes Vargas</u>, 135 F.Supp.2d at 08-09.  Thus,
plaintiffs reliance on <u>Porter v. Osborne</u>, 546 F.3d 1131 (9th Cir.
2008) is misplaced.  In <u>Porter</u>, the court recognized that the
decedent's parents may assert their own cause of action for
violating their Fourteenth Amendment right to the companionship and
society of their children if the district court, on remand,
determines the defendant acted with a "purpose to harm."  The
court, however, still required the unconstitutional behavior to be
aimed at the family relationship.  <u>Id</u>. at 1136.  The Ninth Circuit
Court of Appeals, unlike the First Circuit Court of Appeals,
affords a parent a Fourteenth Amendment right to the companionship
and society of their children.  <u>Id</u>.  The Court declines, as it
must, to follow Ninth Circuit precedent when the First Circuit
Court of Appeals has spoken otherwise.

        Therefore, plaintiffs' section 1983 action against the
Supervisory Defendants in their personal capacity is **DISMISSED WITH
PREJUDICE**, but plaintiffs section 1983 action, in their
representative capacity, survives.

### III. Supervisory Liability Under Section 1983

Section 1983 is a vehicle for asserting rights conferred by the United States Constitution against state officers.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To state a claim pursuant to section 1983, plaintiffs must plausibly plead that (1) the Supervisory Defendants' conduct denied Caceres' Constitutional rights while (2) acting "under color of state law."  Soto, 103 F.3d at 1056; Moreno-Perez v. Toledo-Davila, 764 F.Supp 2d. 351, 359 (D.P.R. 2011).  The Supervisory Defendants do not dispute the second element:  that they were acting under the color of state law.  Therefore, the issue in dispute is the first element: whether plaintiffs have sufficiently pled that the Supervisory Defendants' conduct denied Caceres' constitutional rights guaranteed by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution.

A court will find supervisory liability where (a) the supervisor's subordinates violated the constitution and (b) the supervisor's acts or omissions were "affirmatively linked" to the behavior so that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference."  Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. University of Puerto

Civil No. 08-1486 (FAB)                                    12

Rico, 864 F.2d 881, 902 (1st Cir. 1998)).  Thus, a supervisor may

not be held liable for a subordinate's violation of Constitutional

rights under a theory of *respondeat superior*.  Iqbal, 129 S.Ct.

at 1952 ("Absent vicarious liability, each government official, his

or her title notwithstanding, is liable for his or her own

misconduct.").  Rather, supervisory liability must be predicated on

a supervisor's own acts or omissions.  Colon-Andino v. Toledo-

Davila, 634 F.Supp.2d 231, 232 (2009) (citing Camilio-Robles v.

Zapata, 175 F.3d 41, 44 (1st Cir. 1999) ("Supervisory liability may

be found either where the supervisor directly participated in the

unconstitutional conduct or where his or her conduct amounts to

tacit authorization."); <u>Aponte-Matos v. Toledo-Davila</u>, 135 F.3d

182, 192 (1st Cir. 1998) (internal citations omitted).[1]

"Supervisory liability under a theory of deliberate

indifference 'will be found only if it would be manifest to any

reasonable official that his conduct was very likely to violate an

---

[1] The Supervisory Defendants argue that the Supreme Court's opinion
in <u>Iqbal</u>, 129 S.Ct. 1937, changed the substantive law governing the
imposition of supervisory liability under section 1983. Although
in <u>Maldonado</u>, the First Circuit Court of Appeals stated that
"[S]ome recent language from the Supreme Court may call into
question our prior circuit law on the standard for holding a public
official liable for damages under § 1983", the court nevertheless
applied its pre-<u>Iqbal</u> jurisprudence. <u>Maldonado</u>, 568 F.3d at 275
(holding that "the Mayor's promulgation of a pet policy that was
silent as to the manner in which the pets were to be collected and
disposed of, coupled with his mere presence at one of the raids, is
insufficient to create the affirmative link necessary for a finding
of supervisory liability, even under a theory of deliberate
indifference."); <u>Rodriguez-Garcia v. Miranda-Marin</u>, 610 F.3d 756
(2010) ("Officers may be held liable 'if the plaintiff can
establish that her constitutional injury resulted from the direct
acts or omissions of the official, or from indirect conduct that
amounts to condonation or tacit authorization.'") (internal
citations omitted). Indeed, district courts embracing the First
Circuit and at least one leading treatise have affirmed the
viability of the First Circuit's pre-<u>Iqbal</u> formulation of
Supervisory Liability. <u>See</u>, <u>e.g.</u>, <u>Oquendo-Rivera v. Toledo</u>, 736
F.Supp.2d 434 (D.P.R. 2010); <u>Valle Colon v. Municipality of
Maricao</u>, No. 09-2217, 2011 WL 1238437 (D.P.R. Mar. 23, 2011)
(quoting Martin A. Schwartz, <u>Section 1983 Litigation: Claims and
Defenses</u>, § 7.19[D] (4th Ed. 2010)); <u>Casanova v. Hillsborough Cnty.
Dep't. of Corr.</u>, No. 10-485, 2011 WL 3568347, at *8 (D.N.H.
Jul. 25, 2011); <u>Hofland v. LaHaye</u>, No. 09-172, 2011 WL 2490959, at
*8 (D. Me. Jun. 21, 2011); <u>How v. Town of N. Andover</u>, No. 10-10116,
2011 WL 1103181, at *4 (D. Mass. Mar. 12, 2011). Therefore, unless
and until the First Circuit Court of Appeals definitively extols on
the issue, the Court will proceed under the pre-<u>Iqbal</u> formulation
of supervisory liability.

individual's constitutional rights.'" <u>Maldonado v. Fontanes</u>, 568
F.3d 263, 275 (2009) (internal citations omitted).  Liability will
be found even if the supervisor does not have actual knowledge of
the unconstitutional behavior.  <u>See</u>, <u>Colon-Andino</u>, 634 F.Supp.2d
at 232 (citing <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576,
582 (1st Cir. 1994)).  Accordingly, "liability attaches if a
responsible official supervises, trains, or hires a subordinate
with deliberate indifference toward the possibility that deficient
performance of the task eventually may contribute to a civil rights
deprivation." <u>Camilo-Robles</u>, 175 F.3d at 44 (internal citations
omitted).  "Under such a theory, a supervisor may be brought to
book even though his actions have not directly abridged someone's
rights; it is enough that he has created or overlooked a clear risk
of future unlawful action by a lower-echelon actor over whom he had
some degree of control." <u>Id</u>. at 44.

Plaintiffs have adequately pled that each of the Supervisory
Defendants' conduct was linked to each of the Field Officers'
alleged unconstitutional conduct under a theory of deliberate

Civil No. 08-1486 (FAB)                                        15

indifference.[2]  See Maldonado, 568 F.3d 263; Torres Calderon v.
Puerto Rico Police Dep't., No. 05-1722, 2007 WL 2428675, at *1
(D.P.R. Aug. 22, 2007).

     The thrust of plaintiffs' complaint is twofold:  the
Supervisory Defendants (1) improperly supervised, evaluated,
monitored and assigned the Field Officers, which ultimately
resulted in them being placed in an "impact unit", and (2) fostered
an environment within the PRPD such that the Field Officers felt
that they could act illegally with impunity.  (Docket No. 64 ¶
at 4.13, 4.31-34.)  Specifically, Colon, Figueroa and Cruz,
directly supervised, assigned and monitored Pagan and Sustache.
Cruz also supervised and monitored Diaz. Cruz and Figueroa made
high *pro forma* evaluations on the Field Officers despite their
known danger to citizens.  Id. at ¶ 4.9.  In fact, in January 2007,
seven months before Pagan shot Caceres, Cruz gave Pagan a glowing
evaluation of his work despite Pagan being suspended for
disciplinary violations during that period.  Id. at ¶ 4.13.  With

---

[2] In plaintiffs' informative motion regarding new case law on Iqbal
and section 1983 liability (Docket No. 324), plaintiffs urged the
Court to consider, in its analysis, the recent First Circuit Court
of Appeals case, Haley v. City of Boston, No. 10-2064, 2011 WL
4347027 (1st Cir. Sept. 19, 2011).  The Court need not consider
Haley, which concerns municipal rather than supervisory liability,
because the Court finds that plaintiffs have plausibly pled
supervisory liability under a theory of deliberate indifference.

Rivera's approval, Colon and Cruz placed Pagan, Sustache and Diaz in the "impact unit" on August 11, 2007.  Id. at ¶ 4.16, 4.20.

Moreover, Toledo, the PRPD Superintendent, implemented policies that discouraged citizens from bringing complaints of police misconduct by requiring complaints to "pass through several levels of analysis before a conclusion was reached," and frequently resolved complaints in the officers' favor merely because the complainant failed to show further interest.  Further, Toledo did not levy serious punishment when allegations of police misconduct were sustained.  Id. at ¶ 4.25-4.28.  One year before the shooting, Pagan was facing expulsion because of his "proven misconduct and violence towards citizens."  Id. at ¶ 4.19.  Toledo reduced the penalty to a mere 60-day suspension.  Id.

In Torres Calderon v. Puerto Rico Police Dep't., 2007 WL 2428675, at *1, the court denied the defendant's motion to dismiss plaintiff's section 1983 claims because the court found that the plaintiff pled sufficient facts to establish supervisory liability. Id. at *2.  There, the plaintiff brought a section 1983 action alleging violations of plaintiff's Fourth Amendment rights.  Id. at *1.  The complaint alleged that a PRPD officer shot the plaintiff.  Id.  While on route to the hospital to treat his critical bullet wounds, PRPD police officers rammed plaintiff's car

with a police cruiser, dragged plaintiff out of the car by the
hair, beat and handcuffed him.  <u>Id</u>. at *1.  The court concluded
that plaintiff's complaint sufficiently alleged supervisory
liability.  Plaintiffs pled that despite the supervisors' knowledge
that the subordinate officers, *inter alia*, had been improperly
recruited, received inadequate training and supervision, had been
the subject of citizen complaints, and had a propensity and pattern
of engaging in violent acts.  <u>Id</u>. Nevertheless, the supervisors
failed to train or evaluate the subordinates properly and failed to
take any action against them or to implement the Department's
existing disciplinary system.  <u>Id</u>. at *2.  Here, like in <u>Torres
Calderon</u>, plaintiffs have pled that the Supervisory Defendants knew
of Pagan's dangerous propensities.  Although Pagan was facing
expulsion from the PRPD, Toledo reduced Pagan's penalty to a 60-day
suspension.  (Docket No 64 at ¶ 4.19.)  Subsequently, Rivera placed
Pagan in an "impact unit" despite Pagan's suspension and several
complaints of aggression and insubordination.  <u>Id</u>. at ¶ 4.20-4.31.
Cruz and Figueroa made high *pro forma* evaluations of Pagan and
Sustache despite their known danger.  <u>Id</u>. at ¶ 4.9.  In fact, in
January 2007, Cruz gave Pagan a glowing evaluation despite the fact
that Pagan was disciplined and had other complaints pending against

him.  Id. at ¶ 4.13.  Therefore, plaintiffs' complaint here, like the complaint in Torres Calderon, survives a motion to dismiss.

Maldonado, 568 F.3d 263, is distinguishable.  In Maldonado, the plaintiffs brought a section 1983 action against, *inter alia*, the Mayor of Barceloneta, Puerto Rico, alleging supervisor liability for violations of their Fourth Amendment right to be free from unreasonable seizures and Fourteenth Amendment procedural and substantive due process rights.  Id. at 226.  The plaintiffs, residents of three public housing complexes, contended that their pets were unconstitutionally seized and killed.  Id.  They posited that the Mayor was liable because the Mayor participated in the pet seizure and promulgated the pet policy for the public housing complex.  Id.  The First Circuit Court of Appeals overturned the District Court's denial of qualified immunity to the Mayor as to the plaintiffs' Fourteenth Amendment substantive due process claims, and dismissed those claims.  Id. at 226.  The court held that the plaintiffs' complaint did not allege a sufficient link between the Mayor's and the subordinates' conduct so as to find supervisory liability.  Id. at 275.  The court reasoned that the complaint did not survive scrutiny under Iqbal because "the Mayor's promulgation of a pet policy that was silent as to the manner in which the pets were to be collected and disposed of, coupled with

his mere presence at one of the raids, is insufficient to create the affirmative link necessary for a finding of supervisory liability, even under a theory of deliberate indifference." Id. at 275.  Here, plaintiffs' complaint goes beyond the conclusory allegations found in Maldonado.  Plaintiffs plead that Toledo implemented policies that discouraged citizens from bringing complaints of police misconduct by requiring complaints to "pass through several levels of analysis before a conclusion was reached," frequently resolving complaints in the officers' favor merely because the complainant failed to show further interest; and he did not levy serious punishment when allegations of police misconduct were sustained.  (Docket No. 64 at ¶ 4.25-4.28.); Id.

The Court finds that plaintiffs have adequately pled that each of the Supervisory Defendants' conduct was linked to each of the Field Officers' alleged unconstitutional conduct.

The next issue the Court must address is whether plaintiffs plausibly pled that the Field Officers violated Caceres' Constitutional rights.

**B.   Fifth and Eighth Amendments**

The Supervisory Defendants argue that plaintiffs' claims under the Fifth and Eighth Amendments should be dismissed because they must be brought under the Fourteenth Amendment:  the Eighth

Amendment protects "convicted inmates" rather than "pre-trial detainees" and the Fifth Amendment is applicable to suits against the federal, not state, government.  The Court agrees.

The Eighth Amendment states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII.  In Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2009), the First Circuit Court of Appeals recognized a dichotomy between pretrial detainees and convicted inmates' rights.  The court stated that the Fourteenth Amendment governs pretrial detainees whereas convicted inmates receive Eighth Amendment protection.  Id.  Because plaintiffs do not contend that Caceres was a convicted inmate, plaintiffs' Eighth Amendment claims must be **DISMISSED WITH PREJUDICE.**

The Fifth Amendment provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.  The First Circuit Court of Appeals and the District of Puerto Rico have consistently held that the Fifth Amendment is inapplicable to causes of action against the Commonwealth of Puerto Rico.  See, e.g., Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 7 n. 4, 8 (1st Cir. 2007; Cruz Velazquez v. Rodriguez Quiñones, 550 F.Supp.2d 243, 250 (D.P.R. 2007) (citing Gerena v. Puerto Rico Legal Serv., Inc.,

Civil No. 08-1486 (FAB)                                          21

697 F.2d 447, 449 (1st Cir. 1983)).  Because plaintiffs' cause of

action is against the PRPD, not the federal government, plaintiffs'

Fifth Amendment claims do not hold water.

       Accordingly, plaintiffs' claims under the Fifth Amendment

are **DISMISSED WITH PREJUDICE.**

       **C.    Fourteenth Amendment**

       The  Due  Process  Clause  of  the  Fourteenth  Amendment

states, "nor shall any state deprive any person of life, liberty,

or property without due process of law."  U.S. Const. amend. XIV.

To survive a motion to dismiss, plaintiffs must plausibly plead

that, (1) plaintiffs were deprived of a life, liberty or property

interest, (2) in a manner that shocks the conscience.  Estate of

Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2009) (Clark v.

Boscher,  514  F.3d  107,  112  (1st  Cir.  2008)).   Plaintiffs

insufficiently plead both elements.

       Plaintiffs have not indicated the theory under which they

predicate  the  Supervisory  Defendants'  Fourteenth  Amendment

liability.  Rather, as stated in Colon-Andino, "[c]ounsel seems to

view the Constitution as merely a buffet table of violation ripe

for listing in the complaint, leaving the Court to fill in the

logical blanks."  634 F.Supp.2d at 232 n. 21.  From what can be

unearthed, plaintiffs aver that Caceres was denied a life and

liberty right to be free from excessive force.  (Docket No. 232 at 13 & Docket No. 64 at 6.2, 38-41.).

In Estate of Bennett, 548 F.3d at 162-3, the First Circuit Court of Appeals held that excessive force claims are not recognized under the Fourteenth Amendment.  Rather, the claims must be brought under the Fourth Amendment.  Id.  Here, it appears as though plaintiffs brought suit alleging violations of Caceres' substantive due process right to be free from excessive force. Therefore, plaintiffs fail to state a cause of action under the Fourteenth Amendment on the face of the pleadings.

Even assuming, arguendo, that the Court were to interpret the amended complaint as grounding liability on an illegal seizure, plaintiffs are still unable to state a cause of action.  "The Supreme Court has held that 'because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically-intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"  Cruz-Acevedo v. Toledo-Davilla, 660 F.Supp.2d 205, 215 (D.P.R. 2009) (quoting Graham, 490 U.S. at 395.

Accordingly, plaintiffs claim under the Fourteenth Amendment is **DISMISSED WITH PREJUDICE.**

D.    **Fourth Amendment**

The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. To state a claim under the Fourth Amendment, plaintiffs must plead (1) that Caceres was seized and (2) that the seizure was unreasonable.    Plaintiffs plausibly plead both elements.[3]  See, Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009).

The first element is satisfied because plaintiffs aver that the Field Officers, without justification, forced Caceres to the ground and threatened to arrest him.  (Docket No. 64 at ¶ 4.1-4.5.)  With Sustache and Diaz's encouragement and instigation, Pagan shot and killed Caceres.  Id.; Estate of Bennett, 548 F.3d at 167 (1st Cir. 2008) ("The seizure of a person occurs when, by means of physical force or a show of authority, an officer restrains the liberty of a person and such person submits to the restriction feeling that he or she is not free to leave.").

_____

[3] From what can be unearthed from plaintiffs' complaint, plaintiffs bring a Fourth Amendment excessive force and failure to intervene claim based on the Field Officers' actions leading up to Caceres' death.  (Docket No. 64.)

Civil No. 08-1486 (FAB)                                          24

In excessive force cases, the question of "reasonableness" is an objective inquiry.  Graham, 490 U.S. at 397; Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009).  The Supreme Court has extolled that the "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  Id.

Plaintiffs have plausibly pled that Caceres' seizure was unreasonable because the Field Officers used excessive force and Sustache and Diaz failed to intervene.  Plaintiffs aver that on August 11, 2007 Caceres was on a street in Humacao.  (Docket No. 64 at ¶ 4.1.)  Without any cause or legal justification, Pagan, Sustache and Diaz, "intervened with . . . [Caceres] and detained him, forcing him to the ground and threaten[ed] him with arrest. Id.  Moreover, plaintiffs aver that "without any cause or justification, Pagan shot at Caceres, with the encouragement and/or instigation of Sustache and Diaz.  Id. at ¶ 4.2.  "After shooting [Caceres] . . . several times, Pagan proceeded to shoot him in his head, fatally injuring him."  See, Santiago, 891 F.2d at 383 (holding that a plaintiff may seek redress under section 1983 if there was no probable cause for an arrest); Melendez v. Muñiz Estrada, No. 10-1891, 2011 WL 3652616, at *4 (D.P.R. Aug. 18, 2011)

(Denying defendants' motion to dismiss a claim for excessive force because "[p]laintiffs committed no crime, nor did they pose any danger to anyone."); <u>Moreno-Perez</u>, 764 F.Supp.2d at 362 (D.P.R. 2011).

To state a claim for failure to intervene under section 1983, plaintiffs must plead that "[a]n officer who is present on the scene . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force." <u>Igartua v. Toledo</u>, No. 09-1923, 2011 WL 147926, at *5-6 (D.P.R. Jan 18, 2011) (quoting <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 207 n. 3 (1st Cir. 1999)).  Nevertheless, an officer is not liable if the officer did not have the opportunity to prevent the use of force.  <u>Id</u>.

Plaintiffs aver that "[w]hile defendant Pagan was illegally intervening with and then shooting the unarmed decedent, defendants Sustache and Diaz failed in their duty to prevent this illegal and constitutional conduct on the part of a fellow PRPD officer." (Docket No. 64 at ¶ 4.4.)  In fact, plaintiffs allege that Sustache and Diaz encouraged and instigated the shooting. (Docket No. 64 at ¶ 4.2.)  After the shooting, Pagan, Sustache and Diaz immediately abandoned the scene.  (Docket No. 64 at ¶ 4.5.) Although Diaz reported the incident through the police

communication system, Diaz deliberately did not say that a citizen
was injured.  (Docket No. 64 at ¶ 4.6.)  Therefore, plaintiffs also
state a claim under the Fourth Amendment for failure to intervene.
See Oquendo-Rivera v. Toledo, 736 F.Supp.2d 434, 440-41 (D.P.R.
2010) (holding that a reasonable jury could infer that defendants
failed to intervene during a shootout where defendants did not
provide details as to their location, timing of the shots or other
information why the shooting occurred).

         Accordingly, the Supervisory Defendants' motion for
judgment on the pleadings and motion to dismiss plaintiffs Fourth
Amendment claim in their representative capacity is **DENIED.**

## IV.  Qualified Immunity

    The qualified immunity doctrine is an "escape hatch" from a
state actor's liability under section 1983.  Maldonado, 568 F.3d
at 268 (internal citations omitted) ("The qualified immunity
doctrine provides defendant public officials an immunity from suit
and not a mere defense to liability.").  In Maldonado, the First
Circuit Court of Appeals formally assumed the test for qualified
immunity articulated by the Supreme Court in Pefarson v. Callahan,
129 S.Ct. 808 (2009).  Id. at 268-69.  A state actor does not
benefit from qualified immunity if:  (1) the plaintiff makes out a
violation of a constitutional right that (2) was "clearly

established" at the time of the alleged violation. Id. (citing Pearson, 129 S.Ct. at 815). Here, the first issue is not in dispute because the Court has held that plaintiffs have sufficiently pled a claim under the Fourth Amendment. At issue is the second element, whether the violation was "clearly established" at the time of the alleged violation.

The "clearly established" element has two analytical prongs: the clarity of the law at the time of the violation and whether a reasonable defendant would have understood that his conduct was unconstitutional. Id. at 269 (citing Anderson, 482 U.S. at 640). Thus, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004) quoting Saucier v. Katz, 533 U.S. 194, 121 (2001)). "That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." Id. (citing Hope v. Pelzer, 536 U.S. 730, 741 (2002)). As such, the analysis, at the motion to dismiss stage, turns on whether "a particular complaint sufficiently alleges a clearly established violation of law." Maldonado, 568 F.3d at 268 (quoting Iqbal, 129 S.Ct. at 268. The

Supervisory Defendants had fair warning that their deliberate
indifference may be unconstitutional because the right of a person
to be free from excessive force from an officer has long been
clearly established. Martinez-Rivera, 498 F.3d at 7 (D.P.R. 2007)
("There is no question that the shooting of an unarmed and harmless
civilian by police officers without provocation or reason, if
proved, constitutes a constitutional violation.").

The Supervisory Defendants argue that they are entitled to
qualified immunity because in the First Circuit, supervisory
liability is in flux (Docket No. 113 at 43.) The Supervisory
Defendants contend that the Supreme Court's decision in Iqbal
altered the substantive law governing supervisory liability. Id.
The Supervisory Defendants' argument, however, is factually
incorrect and substantively irrelevant. As the Court previously
noted, *supra* n. 1, the district courts embracing the First Circuit
have consistently applied the same pre-Iqbal standard to
supervisory liability. Therefore, **defendants'** motions to dismiss
and for judgment on the pleadings on the grounds of qualified
immunity is **DENIED**.

## IV.  **Article 1802**

Plaintiffs accompanied their section 1983 action with
supplemental state law claims under article 1802 of the Civil Code

("Article 1802"), Laws of P.R. Ann. tit. 31 § 5141.  (Docket No. 64 at ¶ 6.2.)   "Considering the similarity of Article 1802 and Section 1983's requirements, if Plaintiff establishes causality under one statute, he may reasonably be entitled to relief under the other." Rodriquez-Diaz v. Marrero-Recio, No. 10-1317, 2010 WL 4117214 at *8-9 (D.P.R. Oct. 20, 2010) (Reconsideration granted, on other grounds, by Rodriquez-Diaz v. Marrero-Recio, No. 10-1317, 2010 WL 5375952 (D.P.R. Dec 28, 2010).  Therefore, because plaintiffs' complaint survives the Supervisory Defendants' motion to dismiss as to plaintiffs' Fourth Amendment claim under section 1983 in their representative capacity, plaintiffs' article 1802 claim survives to the same extent. Id.  Therefore, the Supervisory Defendants' motion to dismiss the article 1802 claim is **DENIED**.

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss and motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**.

In short, the only claims remaining in this case is plaintiffs' Fourth Amendment action in their representative capacity, pursuant to section 1983, and their article 1802 claim.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 3, 2011.

<u>s/ Francisco A. Besosa</u>
Francisco A. Besosa
United States District Judge