IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EVELYN RAMIREZ-LLUVERAS, *et al.*, **Plaintiffs**, v. JAVIER PAGAN-CRUZ, *et al.*, **Defendants**. | **CIVIL NO.** 08-1486 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

This litigation arises out of Miguel A. Caceres-Cruz's ("Caceres") murder by former Puerto Rico Police Department ("PRPD") officer Javier Pagan-Cruz ("Pagan"). Pagan was convicted by the Puerto Rico Court of First Instance, Humacao Division, of First Degree Murder, P.R. Laws Ann. Tit. 33, § 4734, for shooting and killing Caceres while attempting to arrest him. Caceres' widow, Evelyn Ramirez-Lluveras, and their three children, Jenitza Caceres, MC and MAC (collectively, the "plaintiffs") bring suit against Pagan, on behalf of themselves and Caceres, pursuant to 42 U.S.C. § 1983 ("section 1983") and Article 1802 of the Puerto Rico Civil

Code, P.R. Laws Ann. tit. 31, § 5141 ("article 1802").[1]  (Docket No. 64.)

Before the Court is the plaintiffs' unopposed motion requesting partial summary judgment regarding Pagan's liability.[2] (Docket No. 365.)  The principal issue is whether there is a genuine issue of material fact that Pagan violated the plaintiffs' rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution when Pagan was convicted of First Degree Murder.  For the reasons set forth below, the Court:  (1) **GRANTS in part and DENIES in part** the plaintiffs' motion; (2) **GRANTS** summary judgment in Pagan's favor with respect to plaintiffs' claims under the Fifth, Eighth and Fourteenth Amendments; (3) **DISMISSES** plaintiffs' section 1983 claim brought in their personal capacities

---

[1] The plaintiffs also brought suit against fellow PRPD field officers Carlos Sustache-Sustache ("Sustache") and Zulma Diaz ("Diaz") (along with Pagan, the "field officers") and several PRPD supervisors, Juan Colon-Baez ("Colon"), Rafael Figueroa-Solis ("Figueroa"), Victor Cruz-Sanchez ("Cruz"), Edwin Rivera-Merced ("Rivera") and Pedro Toledo-Davila ("Toledo") (collectively, the "supervisory defendants").  On December 22, 2011, the Court granted the supervisory defendants' motion for summary judgment and dismissed the plaintiffs' suit against them.  (Docket No. 338.) The suit continued as to the field officers.

[2] The Court entered default against Pagan for failing to answer plaintiffs' complaint despite being served with process. (Docket No. 20.)  Defendant Diaz responded that she does not oppose plaintiffs' motion. (Docket No. 367 at ¶ 2.)  Diaz states that she "opposes the collateral use of the judgment against her or any reference in the judgment to her."  (Id. at ¶ 3.)  As plaintiffs' motion only concerns the preclusive effect of the judgment against Pagan, the Court need not, at present, address Diaz's conclusory contention.  Defendant Sustache-Sustache has not responded in a timely manner.  See D.P.R. Civ. R. 7, 56(a).

Civil No. 08-1486 (FAB)                                            3

against Pagan; and (4) **ORDERS PLAINTIFFS TO SHOW CAUSE** why the Court should not grant summary judgment in favor of defendants Diaz and Sustache-Sustache with respect to plaintiffs' claims brought pursuant to the Fifth, Eighth and Fourteenth Amendments.

**SUMMARY JUDGMENT STANDARD**

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." See Rule 56(c). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears

the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inference in that party's favor." Griggs-Ryan v. Smith, 904 F.3d 112, 115 (1st Cir. 1990). The Court may safely ignore, however, "conclusory allegations,

improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

The plaintiffs argue that they are entitled to partial summary judgment on liability because the issue preclusion doctrine conclusively establishes Pagan's liability when Pagan was found guilty of murdering Caceres.[3] After addressing the plaintiffs' standing to bring suit under section 1983, the Court analyzes whether the plaintiffs are entitled to summary judgment.

## I. Section 1983 Standing

"Standing is the determination of whether a specific person is the proper party to bring a particular matter to the court for adjudication." Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 104 (1st Cir. 1995) (citing Erwin Chemerinsky, Federal Jurisdiction § 2.3, at 48 (1989)). Plaintiffs bring suit against Pagan on their own behalf and a survival claim on Caceres' behalf. (Docket No. 64.) The Court may review whether the plaintiffs have standing to bring suit *sua sponte*. Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006) (internal citations omitted).

---

[3] Issue preclusion is defined as "[t]he binding effect of a judgment as to matters actually litigated and determined in one action on later controversies between the parties involving a different claim from that on which the original judgment was based." Black's Law Dictionary (9th ed. 2009). Issue preclusion is often referred to as collateral estoppel.

Civil No. 08-1486 (FAB)                                                    6

Plaintiffs have standing to assert a section 1983 action on Caceres' behalf because Puerto Rico law permits a decedent's heirs to recover for the decedent's pain and suffering prior to death. Ramirez-Lluveras v. Pagan-Cruz, No. 08-1486, 2011 WL 4552536, at *4-5 (D.P.R. Oct. 3, 2011) ("Ramirez-Lluveras I") (internal citations omitted). In contrast, plaintiffs have standing to bring suit in their individual capacities pursuant to section 1983 only if Pagan's conduct was aimed at the familial relationship. Robles-Vazquez v. Tirado-Garcia, 110 F.3d 204, 206 n.4 (1st Cir. 1997). In Ramirez-Lluveras I, this Court held that the plaintiffs lacked standing to bring suit against supervisory defendants in their personal capacities. There, the Court reasoned that the plaintiffs' allegation that the supervisory defendants' conduct deprived them of the enjoyment of Caceres' company was not aimed at the familial relationship. Id. (citing Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997); Reyes-Vargas v. Rosello-Gonzalez, 135 F.Supp.2d 305, 308-09 (D.P.R. 2001); Gonzalez-Rodriguez v. Alvarado, 134 F.Supp.2d 451, 452-53 (D.P.R. 2001). Accordingly, here, like in Ramirez-Lluveras I, the plaintiffs' section 1983 action brought in their personal capacities against Pagan is **DISMISSED WITH PREJUDICE**.

**II. The Preclusive Effect of State Criminal Convictions on Subsequent Civil Actions**

The plaintiffs argue that Pagan's conviction conclusively establishes Pagan's liability under section 1983. (Docket No. 365

Civil No. 08-1486 (FAB)                                                7

at ¶ 1.)  The plaintiffs do not cite to any authority addressing the preclusive effect of a state court criminal conviction on a subsequent federal civil suit.[4]  Nevertheless, the Court will delve into the lacuna left by the plaintiffs and determine to what extent, if any, the Court may use Pagan's criminal conviction.

Pursuant to 28 U.S.C. § 1738, "judicial proceedings of any court of any . . . State, Territory or Possession . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  Thus, because the plaintiffs attempt to use Pagan's Puerto Rico criminal conviction to establish liability in this civil suit, Puerto Rico law governs the preclusive effect of the conviction.  See Allen v. McCurry, 449 U.S. 90, 95 (1980) (internal citations omitted)

---

[4] The plaintiffs merely state that "[b]y supplying the court with documents herewith, it is respectfully submitted that any doubt this court may have had concerning Mr. Pagan's liability being conclusively established should be allayed." (Docket No. 365 at ¶ 24.)  The plaintiffs' omission is especially troubling because on at least two other occasions the Court stressed to plaintiffs' counsel the importance of developed legal analysis.  (See e.g., Docket Nos. 338, 353.)  Indeed, the Court previously denied the plaintiffs' motion to reconsider the Court's order denying the plaintiffs' motion for partial final judgment, in part because the plaintiffs' counsel failed to even acknowledge the requirements needed to establish issue preclusion.  (Docket No. 353 at 4.)  It should go without saying that legal analysis is at least a three-step process:  "(1) finding similar cases; (2) identifying a rule that explains the holdings in those cases; and (3) applying that rule to your situation to predict an outcome."  Cathy Glazer et al., The Lawyer's Craft:  An Introduction to Legal Analysis, Writing, Research, and Advocacy 30 (2002).  Plaintiffs have neglected performing each of the three fundamental steps.

("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgment emerged would do so.").

Puerto Rico's issue preclusion law is codified at P.R. Laws Ann. tit 31, § 3343 ("section 3343").[5] Under Puerto Rico law, the issue preclusion doctrine precludes relitigation of an issue determined by a Puerto Rico criminal court in a subsequent federal civil suit only "'if in the adjudication of the prior case, facts which are necessarily decisive for the second [case] were clearly and directly considered and adjudged.'"  Perry v. Capitol Air, Inc., 649 F. Supp. 1260, 1264-65 (D.P.R. 1986) (quoting Pueblo v. Ortiz-Marrero, 106 D.P.R. 140, 144 (1977)); Canales Garcia v. Santiago, Case No. N3CI2007-00299, 2011 WL 4018185, at *4 (TCA July 15, 2011).  The facts necessary for Pagan's criminal conviction are not identical to those required to establish liability in this case.  A *prima facie* case under section 1983 requires, among other things, the defendant to be acting under the color of state law.  Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989) (internal citations omitted).  In

---

[5] Pursuant to section 3343, issue preclusion applies where "between the case decided by the sentence and that in which the same is invoked, there be the most perfect identify between the things, causes, and persons of the litigants, and their capacity as such."  See Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 29 (1st Cir. 1998) (internal citations omitted) (observing that although section 3343 refers only to claim preclusion, section 1983 also extends to issue preclusion).

Civil No. 08-1486 (FAB)                                                  9

contrast, the Puerto Rico Penal code defines First Degree Murder as any murder committed "by means of . . . premeditation."  P.R. Laws Ann. tit. 33, § 4733.  The prosecution need not establish that the accused was acting under the color of law to sustain a conviction.  Therefore, Pagan's guilty conviction is not entitled to full preclusive effect in this case.  See Perry, 649 F.Supp. at 1264-65.

Nevertheless, the Puerto Rico Supreme Court has stated that even if a criminal conviction is not entitled to full preclusive effect, "[t]he facts established in a criminal prosecution . . . constitute *prima facie evidence of their existence*, admissible in the civil action."  Toro-Lugo v. Ortiz-Martinez, 5 P.R. Offic. Trans. 310, 315 (1976) (emphasis added); Croly v. Mercado de la Pena, Nos. D DP2008-0806, D DP2008-0102 2010 WL 4386823, at *5 (TCA June 18, 2010).  Neither Pagan, who is in default, nor Diaz and Sustache-Sustache, who don't oppose plaintiffs' motion, challenge the facts underlying Pagan's conviction.  Accordingly, even though Pagan's conviction does not conclusively establish Pagan's

Civil No. 08-1486 (FAB)                                                10

liability under section 1983, the Court may use the facts underlying the conviction as proof of liability.[6]  Id.

**III. Pagan's Section 1983 Liability**

Section 1983 is a vehicle for asserting rights conferred by the United States Constitution against state officers. Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To be entitled to partial summary judgment, the plaintiffs must establish that there is no issue of material fact that Pagan:  (1) caused Caceres to be deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States, (2) while acting under the color of state law.  Cartagena, 882 F.2d at 559 (internal citations omitted); Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing section 1983).  The plaintiffs support

---

[6] The Eleventh Circuit's opinion in Parker v. Williams, 862 F.2d 141 (11th Cir. 1989) is inapposite. The plaintiff in Williams was raped by a county's chief jailer. Id. at 1473-74.  After the chief jailer was convicted in state court, the plaintiff brought a civil suit under section 1983 against, *inter alia*, the chief jailer and the county sheriff. Id. The district court prevented the sheriff from introducing potentially exculpatory evidence because the issue preclusion doctrine prevented relitigation of the facts found in the criminal conviction. Id. The Eleventh Circuit Court of Appeals stated that the district court erred in applying the issue preclusion doctrine because the sheriff was not permitted to litigate the facts of the rape in the chief jailer's criminal trial. Id. at 1474-75. Here, unlike in Williams, the Court is not affording full preclusive effect to Pagan's murder conviction. Rather, in accordance with Puerto Rico law, the Court is only treating the facts established in Pagan's criminal trial as *prima facie* evidence that may be rebutted.  Neither Diaz nor Sustache-Sustache submitted evidence casting doubt on the facts underlying Pagan's conviction.  Thus Diaz and Sustache-Sustache, unlike the sheriff in Williams, had, but squandered, the opportunity to challenge the veracity of the facts underlying Pagan's conviction.

Civil No. 08-1486 (FAB)                                                  11

their motion by submitting the judgment from the Appellate Court of the Commonwealth of Puerto Rico affirming Pagan's First Degree Murder conviction and the Supreme Court of Puerto Rico's resolution denying *certiorari*.  (Docket No. 365-1.)  Each element will be discussed in turn.

**A.    Alleged Deprivation of Caceres' Constitutional Rights**

Plaintiffs allege that Pagan violated their rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution when Pagan murdered Caceres.

**1.    Fifth, Eighth, and Fourteenth Amendments**

In Ramirez-Lluveras I, this Court held that the plaintiffs' claims against the supervisory defendants grounded on the Fifth, Eighth and Fourteenth Amendments must be dismissed as a matter of law.  2011 WL 4552536, at *5-9.  In short, the Court dismissed the plaintiffs' claims because:  the Eighth Amendment does not protect Caceres because Caceres was murdered during the course of an arrest; the Fifth Amendment applies only to the federal government, not PRPD officers; and excessive force claims are cognizable by the Fourth rather than the Fourteenth Amendment. Id.  Therefore, for the reasons set forth in Ramirez-Lluveras I, the plaintiffs' motion for partial summary judgment against Pagan is **DENIED** with respect to the plaintiffs' action brought under the Fifth, Eighth, and Fourteenth Amendments to the Constitution. Moreover, summary judgment is **GRANTED** in Pagan's favor with respect

Civil No. 08-1486 (FAB)                                              12

to plaintiffs' claims brought under the Fifth, Eighth and Fourteenth Amendments because plaintiffs had the opportunity to argue but failed to show why they are able to state a claim under those provisions.  Id.; See Bank v. Int'l. Bus. Machs. Corp., 145 F.3d 420, 431 (1st Cir. 1998) (holding that a court may move *sua sponte* for summary judgment in favor of a nonmoving party "if the litigation is sufficiently advanced that both parties have had a reasonable opportunity to present any material evidence in their favor."); Fed.R.Civ.P. 56(f).

   **2.   Fourth Amendment**

      The Fourth Amendment to the U.S. Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. Const. amend IV.  A person's Fourth Amendment rights are violated when:  (1) they are seized; and (2) the seizure was unreasonable.  See Graham, 490 U.S. at 395-96.  The first element is of no moment because Pagan murdered Caceres.  (Docket No. 365-1); Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("there can be no question that apprehension by the use of deadly force is a seizure . . .").

      In general, questions of reasonableness are a jury's provenance.  Roy v. Inhabitants of Lewiston, 42 F.3d 691, 694-95 (1st Cir. 1994).  But where, as here, the record establishes that no reasonable juror could find that an officer was reasonable in

using deadly force, reasonableness may be determined as a question of law by the court. See id. An officer's use of deadly force is reasonable "if an objectively reasonable officer in the same circumstances would have believed that an individual posed a threat of serious physical harm either to the officer or others." Estate of Bennett v. Wainwright, 548 F.3d 155, 175 (1st Cir. 2008) (internal quotations and citations omitted). The officer's intent or motivation is irrelevant. Graham, 490 U.S. at 397 (internal citations omitted).

As previously mentioned, under Puerto Rico law, a person is guilty of First Degree Murder when they commit murder "by means of . . . premeditation." P.R. Laws Ann. tit. 33, § 4734. Murder, in turn, is defined as "to kill another human being with intent." P.R. Laws Ann. tit. 33, § 4733. Thus, it is axiomatic that Pagan acted unreasonably when he murdered Caceres. To hold otherwise would imply the unsustainable conclusion that a person guilty of murdering another may have acted in an objectively reasonable manner. Indeed, as acknowledged by the Appellate Court of the Commonwealth of Puerto Rico, a First Degree Murder conviction determines the absence of just cause or excuse. (Docket No. 365-1 at 29); Pueblo v. Gonzalez-Pagan, 20 P.R. Offic. Trans. 713, 719 (1988).

Even assuming, *arguendo*, Pagan was not convicted of murder, the facts found by the Puerto Rico Court of First Instance

Civil No. 08-1486 (FAB)                                                 14

and the record indicate that Pagan acted unreasonably.[7]  (Docket Nos. 365-1, 262, 338.)  To determine whether an officer acted unreasonably, the court consults three factors:  (1) the severity of the decedent's crime; (2) whether the decedent posed a threat to safety; and (3) whether the decedent resisted arrest.  Graham, 490 U.S. at 396 (internal citations omitted); Raiche v. Pietroski, 623 F.3d 30, 36 (1st Cir. 2010).  First, it is doubtful that Caceres committed any crime, let alone a severe crime:  Pagan initially intervened with Caceres because Caceres was directing traffic and responded to Pagan with attitude.  (See Docket No. 262 at ¶¶ 2.38-2.42, 2.49; Docket No. 365-1 at 24.)  Second, although the record indicates that Caceres retreated backward to avoid arrest, there is no indication that physical force, deadly or otherwise, was needed to detain Caceres.  (Docket No. 262 at ¶¶ 2.51-2.52; Docket No. 322 at Ex. 26; Docket No. 365-1.)  Caceres did not brandish a weapon, attempt to flee the scene or otherwise behave belligerently. Finally, any threat Caceres *may* have posed was neutralized after Pagan fired at and injured Caceres.  (Docket No. 365-1 at 25, 30; Docket No. 262 at ¶¶ 2.73-2.75.)  Nevertheless, after the initial shots, Caceres paused and shot Pagan again.  Id.; see Napier v. Town of Windham, 187 F.3d 177, 185-87 (1st Cir. 1999) (analyzing

---

[7] Fed.R.Civ.P. 56(c)(3) states that although "[t]he court need consider only the cited materials . . . it may consider other materials in the record."

each series of an officer's shots separately to determine whether the officer's conduct was reasonable).

Accordingly, there is no issue of material fact that Pagan acted unreasonably when he murdered Caceres. The next issue is whether Pagan acted under the color of state law.

**B.   Acting Under Color of State Law**

Section 1983 only applies to persons acting under color of state law. Rehberg v. Paulk, 132 S. Ct. 1497, 1505 (2012) (citing Briscoe v. LaHue, 460 U.S. 325, 329 (1983)). Pagan was a PRPD officer when he murdered Caceres. (Docket No. 365-1 at 24-25; Docket No. 262 at ¶¶ 1.8, 2.38.) Nevertheless, in determining whether an officer was acting under the color of law or was merely engaging in personal conduct, "[t]he key determinant is whether the actor, at the time in question, purports to act in an official capacity or to exercise official responsibilities pursuant to state law." Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995) (citing West v. Atkins, 487 U.S. 42, 49 (1988)).

Pagan was acting under color of state law when he attempted to arrest Caceres. See Screws v. United States, 325 U.S. 91, 107 (1945) (holding that law enforcement officials were acting under the color of law when "making the arrest . . . and in assaulting" a citizen.); see also West, 487 U.S. at 50 ("Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his

Civil No. 08-1486 (FAB)                                              16

responsibilities."). Moreover, Pagan arrived at the scene in a PRPD vehicle and used his service weapon to shoot Caceres. (Docket No. 365-1 at 24-25; Docket No. 262 at ¶ 2.38); see Parrilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 449 (1st Cir. 1997) (citing Martinez, at 986-87) (holding that the Court may consider several "not necessarily determinative" factors including "a police officer's garb; an officer's duty status . . .; the officer's use of a service revolver; and, the location of the incident.").

Accordingly, because there is no issue of material fact that Pagan deprived Caceres' of his Fourth Amendment rights while acting under the color of state law, plaintiffs' motion for partial summary judgment as to Pagan's liability under section 1983 is **GRANTED**.

**IV. Pagan's Article 1802 liability**

The plaintiffs invoke the Court's supplemental jurisdiction to bring a claim under article 1802. Plaintiffs allege that Pagan's liability is conclusively established because Pagan was found guilty of First Degree Murder. (Docket No. 365 at ¶ 24.) Article 1802 provides, in pertinent part, that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obligated to repair the damage so done." Thus, article 1802 "establishes three elements for a tort claim: (1) a negligent or intentional act or omission; (2) damages; and (3) a causal connection between the damages and the defendant's act or

Civil No. 08-1486 (FAB)                                                17

omission.  Kolker v. Hurwitz, No. 09-1895, 2011 WL 292264, 6 (D.P.R. Jan. 31, 2011) (citing Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir. 2007); Torres v. Kmart Corp., 233 F.Supp.2d 277-78).  Plaintiffs satisfy each element because Pagan intentionally murdered Caceres by shooting him during an arrest.  (Docket No. 365-1.)  Accordingly, plaintiffs' motion for partial summary judgment as to Pagan's liability under article 1802 is **GRANTED.**

**V.   CONCLUSION**

For the reasons set forth above, the plaintiffs' motion for partial summary judgment is **GRANTED in part and DENIED in part**.  Plaintiffs' motion is **GRANTED** as to Pagan's liability pursuant to section 1983 for a Fourth amendment violation, and pursuant to article 1802.  Summary judgment is **GRANTED** in Pagan's favor with respect to plaintiffs' claims under the Fifth, Eighth and Fourteenth Amendments.  Additionally, the Court **DISMISSES** plaintiffs' section 1983 claims brought in their personal capacities against Pagan.

As a final matter, plaintiffs are **ORDERED TO SHOW CAUSE** no later than **April 30, 2012 at 5:00 p.m.**, why the Court should not grant summary judgment in favor of defendants Diaz and Sustache-Sustache with respect to plaintiffs' claims brought pursuant to the Fifth, Eighth and Fourteenth Amendments of the Constitution of the United States.  See Fed.R.Civ.P. 56(f) ("After giving notice and a

Civil No. 08-1486 (FAB)                                                18

reasonable time to respond, the court may grant summary judgment for a nonmovant.").

**IT IS SO ORDERED.**

San Juan, Puerto Rico, April 23, 2012.

                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    UNITED STATES DISTRICT JUDGE